IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICK JOSEPH ESSINGER, SR. AND § | | |
| CONSTANCE LORRAINE ESSINGER, § | | |
| INDIVIDUALLY, AND AS § | | |
| ADMINISTRATORS OF THE ESTATE OF § | | |
| JOLEE PAIGE ESSINGER, DECEASED § | | PLAINTIFFS |
| § | | |
| v. § | CIVIL ACTION NO. 1:06CV176-LG-RHW | |
| § | | |
| LIBERTY MUTUAL FIRE § | | |
| INSURANCE COMPANY § | | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING
THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER COMES BEFORE THE COURT on Defendant, Liberty Mutual Fire Insurance Company's Motion for Summary Judgment [33]. After consideration of the parties' submissions and the applicable law, the Court finds that Defendant's Motion for Summary Judgment should be granted, and Plaintiffs' claims should be dismissed.

**I. FACTS AND PROCEDURAL HISTORY:**

On August 5, 2005, Jolee Paige Essinger was a guest passenger in a borrowed automobile driven by an uninsured driver. She was tragically killed in a one-vehicle accident in Cusseta, Georgia. Although the driver of the vehicle was uninsured, the owner was insured under a State Farm policy that provided $25,000 in liability coverage for bodily injury, $15,000 in uninsured motorist's coverage, and $10,000 in medical payments coverage. Jolee was also an insured under her father's Liberty Mutual policy, which provided $50,000 in uninsured motorist's coverage for each of the Essingers' two vehicles. The Liberty Mutual policy also provided $1000 in medical payments coverage.

On September 11, 2002, Patrick Essinger called Liberty Mutual's "800 Center" and reported a claim under his policy for his daughter's death. (Ex. B to Defendants' Motion at LMECL-00121). After obtaining documentation of the funeral expenses, death certificate, and amount of medical payments coverage paid by State Farm, Liberty Mutual paid the Essingers $1000.00 in medical payment coverage on October 14, 2002. (Ex. A to Defendants' Motion at LMCL-00002). On January 28, 2003, the Essingers' daughter, Rebecca Weyant, contacted Liberty Mutual in order to make an uninsured motorist's claim. (Ex. B to Defendant's Motion at LMECL-00067). The following day, the claim was assigned to Jennifer Gilcrease, and she began an investigation of the claim. (Ex. B to Defendant's Motion at LMECL-00066). On January 31, 2003, Gilcrease spoke with Colleen Essinger via telephone and learned that State Farm had offered the Essingers $25,000.00– its policy limits for bodily injury coverage. (Ex. B to Defendant's Motion at LMECL-00065). Colleen asked Gilcrease during this conversation whether she should retain an attorney, and Gilcrease replied that she would not in this case, since they would take part of the settlement. (Ex. B to Defendant's Motion at LMECL-00065). According to Gilcrease's notes, she attempted to call Colleen Essinger on February 10, 2003, in order to offer $75,000.00, which represented what Gilcrease understood to be Liberty Mutual's policy limits after an offset was taken for the $25,000.00 paid by State Farm. According to Gilcrease, Colleen was unable to speak with her at that time. (Ex. B to Defendant's Motion at LMECL-00063).

On February 11, 2003, Gilcrease was contacted by the Essingers' attorney, who, according to Gilcrease's notes, informed her that Liberty Mutual "owed State Farm a $15,000 offset for uninsured motorists' coverage." (Ex. B to Defendant's Motion at LMECL-00062).

During the conversation, Gilcrease offered $75,000.00, which was rejected by the attorney. (Ex. B to Defendant's Motion at LMECL-00062).

After several attempts to obtain an explanation of the Essingers' attorneys' position regarding the amount owed under Liberty Mutual's policy, Gilcrease consulted with Mississippi counsel. Liberty Mutual's Mississippi counsel confirmed that under Mississippi law Liberty Mutual owed an additional $15,000.00 in coverage to the Essingers. On April 8, 2003, Liberty Mutual offered $90,000.00, and the Essingers accepted the offer on April 10, 2003, but reserved the right to file a bad faith claim against Liberty Mutual. (Ex. B to Defendant's Motion at LMECL-00059). The Essingers filed a complaint against Liberty Mutual on December 29, 2005, alleging that Liberty Mutual had acted in bad faith.

## II.  LAW AND ANALYSIS:

A motion for summary judgment should be granted if there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56©). When a motion for summary judgment is made and properly supported, the opposing party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

In the complaint, the Plaintiffs allege that Liberty Mutual committed two errors during the processing of their claim. The first error was the failure to identify the claim as an uninsured motorists' claim, and the second was the failure to properly calculate the amount of uninsured motorist coverage available to Plaintiffs under the Liberty Mutual policy and applicable Mississippi law. *See Dixie Insurance Company v. State Farm Mutual Automobile Insurance Co.*,

614 So. 2d 918 (Miss. 1992). According to the complaint, these two errors resulted in a seven month delay in payment of the Plaintiff's claim. Plaintiffs argue that each of these errors amounted to bad faith on the part of Liberty Mutual. They also alleged that Liberty Mutual's adjuster acted in bad faith when she advised Colleen Essinger that she would not need to hire an attorney.

The facts presented in the case *sub judice* are analogous to the facts in *Windmon v. Marshall,* 926 So.2d 867 (Miss. 2006), *Pilate v. American Federated Ins. Co.,* 865 So.2d 387 (Miss. Ct. App. 2004), *Tutor v. Ranger Ins. Co.*, 804 F.2d 1395 (5th Cir. 1986), and *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092 (Miss. 1996). For example, in *Windmon*, the Mississippi Supreme Court held that the insurer's conduct, which resulted in a delay in payment to the insured, did not rise to a level requiring consideration of punitive damages where the insurer's conduct was at most simple negligence. *Windmon,* 926 So.2d at 874. In *Tutor* and *Caldwell*, the Courts held that the insurers' conduct did not warrant an award of punitive damages where payment of the insureds' claim was delayed while the parties disputed the amount owed under the policy. *Tutor*, 804 F.2d at 1399; *Caldwell*, 686 So. 2d at 874. In *Pilate*, the Court held that an error or oversight that resulted in a delay in payment did not constitute conduct of such an egregious nature that punitive damages should be considered. *Pilate*, 865 So. 2d at 400.

It is important here to note that Liberty Mutual never *denied* Plaintiffs' claim. Plaintiffs' claim was *delayed*. However, Plaintiffs have failed to produce evidence rising to the "level of egregiousness" which would justify an award of punitive damages. *Caldwell,* 686 So. 2d at 1097. Within two weeks of Plaintiffs' uninsured motorist claim, Liberty Mutual was prepared to tender what it mistakenly believed to be the policy limits. After learning from Plaintiffs' attorney

that Liberty Mutual's exposure under Mississippi law was increased by $15,000, they retained local counsel.  After local counsel advised Liberty Mutual's concerning Mississippi uninsured motorist substantive law, Liberty Mutual tendered the full $90,000.  Liberty Mutual's miscalculation of the policy limits amounts, at most, to negligence.  Its mistake was corrected, and the full amount tendered within a short time span.

Finally, Plaintiffs argue that Liberty Mutual's adjuster, Jennifer Gilcrease, acted in bad faith when she advised Colleen Essinger that she would not hire a lawyer in this case if she were the insured.  Gilcrease's statement was in direct response to Essinger's inquiry.  There is no evidence that Gilcrease's statement was inaccurate or intended to trick, mislead or prevent Essinger from ascertaining the limits of the Liberty Mutual's exposure.  Moreover, the conversation between Gilcrease and Essinger occurred on January 31, 2003.  Liberty Mutual was contacted by the Plaintiffs' attorney on February 11, 2003.  Therefore, Gilcrease's statements did not deter Plaintiffs from hiring an attorney within eleven days.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Liberty Mutual Fire Insurance Company's Motion for Summary Judgment [33] is **GRANTED**.

**SO ORDERED AND ADJUDGED** this the 12th day of April, 2007.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE